A02A1654. SCHNEIDER v. SUSQUEHANNA RADIO CORPORATION.
A02A1655. SUSQUEHANNA RADIO CORPORATION v. GARVER.
(581 SE2d 603)

MIKELL, Judge.

Susquehanna Radio Corporation owns and operates Atlanta radio station WNNX, popularly known as "99X." In the spring of 1999, Ryan A. Schneider received the following prerecorded message on his home telephone answering machine from morning radio show host Jimmy Baron:

> Hello. Hey, you there? Hello, pick up. Hey, it's Jimmy from 99-X calling. Yeah, I just wanted to know if I could borrow your car. Oh, I also needed to tell you about the 50,000 Delta SkyMiles we're giving away on 99-X. Every Monday through Friday at 7, 11, 1, 3 and 5 — 50,000 Delta SkyMiles. It ends this week. Look, if you need more information, just call (404) 287-1008 [ten oh eight]. So listen tomorrow morning at 7. And, get back to me about your car.

Mathew Gerald Garver received a similar message on his home telephone answering machine from radio personality Leslie Fram:

> Hi. This is Leslie from the Morning-X on 99-X. I just wanted to make sure that you were included in Delta Destination II.

Over the next 5 weeks, 99-X is giving away 7 million Delta SkyMiles. I wanted to personally give you the times to listen each weekday to win. Starting at 7 AM on the Morning-X, and then at 11, 1, 3, and 5, you could win 50,000 Delta SkyMiles. Here's the number to call for more information: (404) 266-0997. Good luck.

On February 18, 2000, Garver and Schneider sued Susquehanna in the State Court of Fulton County, claiming that its delivery of the prerecorded messages to their residential telephone lines violated the federal Telephone Consumer Protection Act[1] ("TCPA"), which provides that

> It shall be unlawful for any person . . . to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the [Federal Communication] Commission.[2]

In accordance with its congressional mandate, the FCC implemented four exemptions to the TCPA's ban:

> The term "telephone call" . . . shall not include a call or message by, or on behalf of, a caller: (1) That is not made for a commercial purpose, (2) That is made for a commercial purpose but does not include the transmission of any unsolicited advertisement, (3) To any person with whom the caller has an established business relationship at the time the call is made, or (4) Which is a tax-exempt nonprofit organization.[3]

Initially, Susquehanna moved for judgment on the pleadings, challenging the constitutionality of the TCPA. The parties then filed cross-motions for summary judgment. The trial court granted Susquehanna's motion with respect to Schneider pursuant to the "established business relationship" exemption because he participated in a free discount program run by 99X. In Case No. A02A1654, Schneider appeals, and we affirm.

However, the trial court denied Susquehanna's motion with

---

[1] 47 USC § 227 (b) (1) (B).

[2] 47 USC § 227 (b) (3) allows the court to award $500 in damages for each such violation, unless actual monetary loss is greater. In addition, the court has the discretion to treble the damages if it finds that the violation was wilful or knowing.

[3] 47 CFR § 64.1200 (c) (1)-(4).

respect to Garver and granted partial summary judgment to Garver, ruling that the call to him was made for a commercial purpose and contained an unsolicited advertisement, thereby violating the TCPA. The court declined to address Susquehanna's constitutional arguments. In Case No. A02A1655, Susquehanna appeals the grant of Garver's motion and the denial of its motions for summary judgment and judgment on the pleadings. We remand for the trial court to determine the constitutionality of the TCPA as applied to Susquehanna.

### Case No. A02A1654

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[4] On appeal from the grant or denial of a motion for summary judgment, we review the evidence de novo,[5] and all reasonable conclusions and inferences drawn from the evidence are construed in the light most favorable to the nonmovant.[6] Viewed in this light, the evidence shows that Schneider was enrolled in 99X's "Freeloader Program." Mark Renier, the radio station's general manager, testified by affidavit that participants in the free program receive discounts at restaurants and on concert, theater, and symphony tickets. Renier further averred that Schneider applied for membership on October 16, 1996, giving his name, address, and telephone number; that he updated his membership information on September 4, 1998; and that he expressly granted 99X permission to contact him. In his affidavit, Schneider admitted his Freeloader status but averred that he supplied 99X with his office telephone number, not his residential one, in order to avoid receiving telemarketing calls at home.

The FCC defines the term "established business relationship" as

a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of an inquiry, application, purchase or transaction by the residential subscriber regarding products or services offered by such person or entity, which relationship has not been previously terminated by either party.[7]

On appeal, Schneider does not appear to dispute that his participation in the "Freeloader Program" fits the FCC's definition of an

---

[4] OCGA § 9-11-56 (c).
[5] *Blue Cross &c. of Ga. v. Kell*, 227 Ga. App. 266, 267 (1) (488 SE2d 735) (1997).
[6] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).
[7] 47 CFR § 64.1200 (f) (4).

"established business relationship." Rather, he argues that the exemption is inapplicable in this case for the three reasons enumerated below.

1. Schneider first contends that the TCPA prohibits, without exemption, any prerecorded call that contains an "unsolicited advertisement."[8] Schneider relies on 47 USC § 227 (b) (2) (B), which delegates to the FCC the power to prescribe regulations to effectuate the TCPA. Specifically, this subsection provides that the FCC may exempt from the TCPA

> (i) calls that are not made for a commercial purpose; and (ii) such classes or categories of calls made for commercial purposes as the Commission determines — (I) will not adversely affect the privacy rights that this section is intended to protect; and (II) do not include the transmission of any unsolicited advertisement.

Schneider argues that by using the word "and," Congress restricted the FCC from implementing any regulation exempting any prerecorded call containing an unsolicited advertisement. Therefore, he argues that the message he received from 99X advertising Delta SkyMiles violated the TCPA despite his relationship with Susquehanna. This strained construction suggests that we ignore the legislative history surrounding the enactment of the TCPA as well as the deference owed by this Court to the FCC's rulemaking authority.

In recommending passage of the TCPA, the Committee on Energy and Commerce

> concluded that an enterprise having an "established business relationship" with a subscriber should be permitted to solicit the subscriber even if the subscriber otherwise objected to unsolicited calls. . . . The Committee recognized this relationship so as not to foreclose the capacity of businesses to place calls that build upon, follow up, or renew . . . [an] "existing customer relationship." For example, . . . [a] person who recently bought a piece of merchandise may receive a call from the retailer regarding special offers or information on related lines of merchandise.[9]

It is clear from the House Report quoted above that Congress did not intend the interpretation of the TCPA urged by Schneider. Moreover,

---

[8] This term is defined as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission." 47 USC § 227 (a) (4).

[9] H.R. Rep. 102-317, 102d Cong., 1st Sess. (1991) at 14.

to adopt Schneider's interpretation would require us to ignore all FCC rules and reports regarding the exemptions to the TCPA. In accordance with United States Supreme Court authority, courts are obliged to defer to an agency's rulemaking authority.

> The power of an administrative agency to administer a congressionally created program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress. If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.[10]

The FCC acted pursuant to an explicit grant of congressional authority when it created four exemptions to the ban on prerecorded calls. Those exemptions are connected by the disjunctive "or";[11] therefore, they must be construed so as to make each exemption self-contained. "Canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise."[12] Here, the context does not dictate otherwise. When the FCC amended its rules regarding the TCPA in 1995, it issued a report stating: "Our rules explicitly exempt calls made *either* by a party with whom the subscriber has an established business relationship *or* calls that do not transmit an unsolicited advertisement and are made for a commercial purpose."[13] Accordingly, within the context of an established business relationship, calls containing an unsolicited advertisement are not automatically prohibited.

2. In his second enumerated error, Schneider asserts that Susquehanna should not be able to escape liability under the TCPA because there is evidence that he was reached as a result of a telemarketing campaign that did not target Freeloader members. Schneider reasons from this evidence that in placing the call at issue,

---

[10] (Citation, punctuation and footnote omitted.) *Chevron U.S.A. v. Natural Resources Defense Council*, 467 U. S. 837, 843-844 (104 SC 2778, 81 LE2d 694) (1984).

[11] 47 CFR § 64.1200 (c) (1)-(4); see n. 3, supra.

[12] (Citation omitted.) *Reiter v. Sonotone Corp.*, 442 U. S. 330, 339 (99 SC 2326, 60 LE2d 931) (1979). The same rule applies in Georgia. See *Gearinger v. Lee*, 266 Ga. 167, 169 (2) (465 SE2d 440) (1996) ("where a legislative provision is phrased in the disjunctive, it must be so construed absent a clear indication that a disjunctive construction is contrary to the legislative intent") (citation omitted).

[13] (Footnote omitted; emphasis supplied.) 10 FCC Rcd. 12400 (17).

Susquehanna did not intend to build upon its relationship with him, creating a question of fact on the applicability of the established business relationship exemption. We disagree. The determinative test is not the caller's intention in placing the call but "the consumer's expectation of receiving the call."[14] It is undisputed that Schneider provided personal information to 99X and availed himself of the privileges of Freeloader membership. He cannot now contend that he did not expect to be called.

3. Finally, Schneider argues that the grant of summary judgment should be reversed based on evidence that when he applied for membership in the Freeloader Program, he provided only his office telephone number. Schneider averred that he did not furnish his residential number because he did not wish to be contacted by telephone at home by 99X. Therefore, he contends that he did not consent to receiving calls at his home, creating an issue of fact as to whether Susquehanna violated the TCPA by doing so.

The fallacy of this argument is best revealed by examining congressional findings and an FCC report interpreting them.[15] The House Report notes that a prohibited "telephone solicitation" includes a call made "to any person (A) without that person's prior express invitation or permission, or (B) with whom the caller does not have an established business relationship."[16] In discussing the category permitting telemarketing calls made with the person's "prior express consent," the FCC concludes that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary."[17] Citing the House Report, the FCC concludes that "telemarketers will not violate our rules by calling a number which was provided as one at which the called party wishes to be reached."[18]

In contrast, the congressional and FCC findings concerning the exemption for prerecorded message calls made to a person with whom the caller has an established business relationship specifically omit the language concerning calling persons "at the number which they have given." The House Report concludes that "an enterprise having an 'established business relationship' with a subscriber should be permitted to solicit the subscriber *even if the subscriber*

---

[14] H.R. Rep. 102-317, supra at 15.
[15] 7 FCC Rcd. 8752 (1992).
[16] H.R. Rep. 102-317, supra at 13.
[17] (Footnote omitted.) 7 FCC Rcd. 8769 (31).
[18] Id.

*otherwise objected to unsolicited calls.*"[19] Similarly, the FCC report concludes that

> a solicitation to someone with whom a prior business relationship exists does not adversely affect subscriber privacy interests. Moreover, such a solicitation can be deemed to be invited or permitted by a subscriber in light of the business relationship. Additionally, the legislative history indicates that the TCPA does not intend to unduly interfere with ongoing business relationships; barring autodialer solicitations or requiring actual consent to prerecorded message calls where such relationships exist could significantly impede communications between businesses and their customers.[20]

Accordingly, it is apparent that Congress did not intend to impose liability upon a telemarketer for calling an established customer at a number other than the one furnished by the customer. Moreover, Schneider could have terminated his participation in the discount program or requested that he be placed on a "do-not-call" list had he wished to avoid calls at home.

> The definition of "telephone solicitation". . . also excludes calls made to parties with whom the caller has an established business relationship. . . . We emphasize, however, that subscribers may sever any business relationship, i.e., revoke consent to any future solicitations, by requesting that they not receive further calls from a telemarketer.[21]

It is undisputed that Schneider never attempted to sever his relationship with Susquehanna. Therefore, he is barred as a matter of law from recovering under the TCPA.

### Case No. A02A1655

4. Susquehanna enumerates four errors on appeal from the trial court's rulings in favor of Garver. However, we consider only one, as it is dispositive. Susquehanna asserts that the trial court erred in ruling that it lacked jurisdiction to consider the constitutionality of the TCPA as applied to Susquehanna.

The record shows that Susquehanna raised this issue in its

---

[19] (Emphasis supplied.) H.R. Rep. 102-317, *supra* at 14.

[20] (Footnotes omitted.) 7 FCC Rcd. 8770 (34).

[21] Id. at 8767 (24), n. 47, cited in *Charvat v. Dispatch Consumer Svcs.*, 95 Ohio St.3d 505, 510 (769 NE2d 829) (2002).

motion for judgment on the pleadings, and the matter was thoroughly briefed by the plaintiffs in their response to the motion. However, when Susquehanna sought to argue the constitutionality of the TCPA during a hearing, the trial court ruled that the issue sounded in equity, should be raised by declaratory judgment action, and, therefore, fell outside the state court's subject matter jurisdiction. This was error. OCGA § 15-7-4 (a) (2) grants state courts jurisdiction over civil trials, "except those actions in which exclusive jurisdiction is vested in the superior courts." It is true that superior courts retain exclusive jurisdiction to try equity cases and declaratory judgment actions.[22] However, Susquehanna did not seek an equitable remedy or declaratory relief; rather, it asserted the unconstitutionality of the TCPA as an affirmative defense to liability in a private action brought under the statute.

Our state courts have frequently taken on constitutional challenges,[23] and the failure to do so is error if the challenge is properly mounted and essential to the outcome of the case.[24] It is true that the reported appellate decisions reflect only rulings by state courts on constitutional challenges leveled against Georgia statutes, while the TCPA is a federal law. But it has long been settled that judges of the courts of the several states have the authority and the duty to refuse to enforce congressional acts which violate the federal constitution.[25] Judicial review of federal statutes by state courts is especially appropriate when, as here, Congress has granted to state courts exclusive jurisdiction over private actions brought to enforce the challenged federal statute.[26]

---

[22] Ga. Const. of 1983, Art. VI, Sec. IV, Par. I; OCGA § 9-4-2.

[23] See, e.g., *Lutz v. Foran*, 262 Ga. 819 (427 SE2d 248) (1993) (appeal from State Court of Chatham County's ruling on constitutionality of OCGA § 9-11-9.1); *Ga. Lions Eye Bank v. Lavant*, 255 Ga. 60 (335 SE2d 127) (1985) (appeal from State Court of Chatham County order holding unconstitutional OCGA § 31-23-6 (b) (1)).

[24] See, e.g., *Lindsey v. State*, 259 Ga. App. 389 (577 SE2d 78) (2003) (remand required where City Court of Atlanta failed to rule on constitutional challenge to OCGA § 16-11-126 (d)); *Albany Surgical v. Dept. of Community Health*, 257 Ga. App. 636 (572 SE2d 638) (2002) (declaratory judgment action remanded to superior court for determination of constitutional issues raised but not ruled upon).

[25] *Cohens v. Virginia*, 19 U. S. (6 Wheat.) 264, 321 (5 LE 257) (1821) ("the State Courts . . . will not only declare an act of the State legislature, but even an act of Congress, unconstitutional and void"). See also *Pierce County, Wash. v. Guillen*, 537 U. S. 129 (123 SC 720, 154 LE2d 610) (2003) (state supreme court's declaration of 23 USC § 409 unconstitutional reversed, but not for lack of jurisdiction); *Flournoy v. Wiener*, 321 U. S. 253 (64 SC 548, 88 LE 708) (1944) (appeal from state supreme court judgment declaring 26 USC § 811 (e) (2) unconstitutional dismissed).

[26] 47 USC § 227 (b) (3); *Hooters of Augusta v. Nicholson*, 245 Ga. App. 363, 365 (1) (a) (537 SE2d 468) (2000). See also *Schulman v. Chase Manhattan Bank*, 268 AD2d 174, 178 (710 NYS2d 368) (2000) ("the TCPA is unusual in that it gives State courts exclusive jurisdiction over private rights of action and limits Federal court jurisdiction to civil actions to enforce the TCPA brought by State Attorneys General or the Federal Communications Commission") (citations omitted).

A challenge to the constitutionality of a statute requires three showings under Georgia law:

> (1) the statute or the particular part or parts of the statute which the party would challenge must be stated or pointed out with fair precision; (2) the provision of the Constitution, which it is claimed has been violated must be clearly designated; and (3) it must be shown wherein the statute, or some designated part of it, violates such constitutional provision.[27]

Susquehanna's motion for judgment on the pleadings satisfies this test. The memorandum submitted in support of the motion asserts that the TCPA violates its right to freedom of speech under the Georgia[28] and U. S. Constitutions; that the TCPA is subject to strict scrutiny as a content-based regulation of noncommercial speech; and that if the message is commercial speech, the application of 47 USC § 227 (b) (1) (B) to Susquehanna cannot withstand either strict or intermediate constitutional scrutiny; and that the distinctions in the TCPA among commercial and noncommercial messages are not reasonable time, place, and manner restrictions. It follows that Susquehanna properly raised an "as applied" attack upon the constitutionality of the TCPA as a defense to this civil action, and the trial court erred in ruling that it lacked subject matter jurisdiction to consider the issue.

Garver argues that review of FCC regulations falls within the exclusive jurisdiction of the federal courts of appeal. Under 28 USC § 2342 (1), the federal courts of appeal are granted exclusive jurisdiction to determine the validity of all final orders of the FCC "made reviewable by section 402 (a) of title 47." That Code section applies to "proceeding[s] to enjoin, set aside, annul or suspend any order of the [FCC] under this Act."[29] Thus, while Garver concedes that Susquehanna may challenge the constitutionality of the TCPA in state court, he asserts that it may not challenge the FCC regulations that

---

[27] (Punctuation omitted.) *Cobb County Bd. of Commrs. v. Poss*, 257 Ga. 393, 395 (1) (359 SE2d 900) (1987), citing *Richmond Concrete Products Co. v. Ward*, 212 Ga. 773, 774-775 (95 SE2d 677) (1956), overruled on other grounds, *State of Ga. v. Crane*, 224 Ga. 643 (164 SE2d 116) (1968).

[28] Federal statutes are not usually susceptible to attack on state constitutional grounds. But the Georgia Constitution might arguably be relevant because the federal statute allows private actions only when they are not prohibited by "the laws . . . of a State. . . ." 47 USC § 227 (b) (3). See generally *Hooters of Augusta*, supra at 364, citing *Intl. Science &c. Institute v. Inacom Communications*, 106 F3d 1146 (4th Cir. 1997). We venture no opinion on whether the Georgia Constitution is applicable. We note that after the trial court rules on the constitutional challenge, appellate jurisdiction will lie in the Supreme Court. Ga. Const. of 1983, Art. VI, Sec. VI, Par. II (1). See generally *Marr v. Ga. Dept. of Ed.*, 264 Ga. 841 (452 SE2d 112) (1995).

[29] 47 USC § 402 (a).

create the exemptions at issue.[30] That is incorrect. The FCC expressly concluded in its 1992 report that

> [a]lthough the TCPA does not explicitly exempt prerecorded message calls from a party with whom the consumer has an established business relationship, it provides an exemption for commercial calls which do not adversely affect residential subscriber privacy interests and do not include an unsolicited advertisement.[31]

The established business relationship exemption is not implicated in Garver's appeal. Accordingly, it is the TCPA which lies at the heart of Susquehanna's constitutional arguments, not the FCC's implementing regulations.

Additionally, the cases cited by Garver do not arise in the context of civil actions between private litigants.[32] We recently construed the TCPA as creating a private right of action in Georgia and conferring jurisdiction over such an action upon our state courts.[33] It follows that the state court is empowered to consider the constitutionality of the TCPA as applied to Susquehanna, and we remand for that purpose.

*Judgment affirmed in Case No. A02A1654. Judgment vacated and case remanded with direction in Case No. A02A1655. Andrews, P. J., and Phipps, J., concur.*

DECIDED MARCH 14, 2003 — ▮

*Weissman, Nowack, Curry & Wilco, Ned Blumenthal, Michael K. Jablonski, Marc B. Hershovitz, C. Ronald Ellington,* for Schneider and Garver.

*Dow, Lohnes & Albertson, Sean R. Smith, Edward A. Webb,* for Susquehanna Radio Corporation.

---

[30] 47 CFR § 64.1200 (c) (1), (2).

[31] 7 FCC Rcd. 8770 (34).

[32] *Moser v. Fed. Communications Comm.*, 46 F3d 970 (9th Cir.), cert. denied, 515 U. S. 1161 (115 SC 2615, 132 LE2d 857) (1995) (district court properly exercised jurisdiction over telecomputer operators' constitutional challenge to 47 USC § 227 (b) (1) (B), while operators challenged FCC's regulations in a separate proceeding in the court of appeals); *United States v. Any & all Radio Station Transmission Equip.*, 207 F3d 458, 463 (8th Cir. 2000) (unlicensed microbroadcaster could not raise constitutional defenses against a civil forfeiture action filed by the FCC).

[33] *Hooters of Augusta*, supra.