*J. Gray Conger, District Attorney, Julia A. Slater, Assistant District Attorney*, for appellee.

## A03A2487. HAMMOND v. CARNETT'S, INC.
### (596 SE2d 729)

JOHNSON, Presiding Judge.

Carnett's, Inc., operates car washes in the Atlanta area. It hired Sunbelt Communications and Marketing, LLC, to send advertisements to 73,500 facsimile machines in the Atlanta area. One of those advertisements was sent to a facsimile machine in Michelle Hammond's home.

On September 20, 2002, Hammond filed a class action lawsuit against Carnett's for violating the Telephone Consumer Protection Act (TCPA),[1] which prohibits the sending of unsolicited advertisements to facsimile machines. Carnett's answered the lawsuit and filed a third-party complaint against Sunbelt. Hammond then moved for class certification, identifying the class as persons throughout Georgia who own facsimile machines and who received a facsimile transmission of Carnett's advertisement, but who had not expressly permitted Carnett's or Sunbelt to add them to their database of facsimile machine owners wanting to be sent advertisements.

The trial court denied Hammond's motion for class certification, but issued her a certificate of immediate review. This court granted Hammond's application for interlocutory appeal, and Hammond timely filed her notice of appeal from the trial court's order denying class certification.

### 1. **Telephone Consumer Protection Act**

The TCPA prohibits various telemarketing activities. In pertinent part, it makes it unlawful "to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine."[2] An unsolicited advertisement is defined as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or

---

[1] 47 USC § 227.

[2] 47 USC § 227 (b) (1) (C).

permission."[3]

The TCPA further creates a private right of action for violations of its prohibitions, providing that for each violation a person is entitled to the greater of actual monetary loss or $500 in damages.[4] "Having provided for a private right of action and having decided the appropriate penalty, Congress did not preclude the use of class actions to obtain redress for violations."[5]

## 2. Class Certification

OCGA § 9-11-23 governs class actions in Georgia. It was rewritten, effective July 1, 2003, and the rewritten version applies to all civil actions filed after that date. The instant case was filed in September 2002, and the order under review was filed on April 29, 2003. Since this action was filed prior to the effective date of the rewritten Code section, we must consider it under the former version of the Code. That version of the Code section provides:

> If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly ensure the adequate representation of all may, on behalf of all, bring or defend an action when the character of the right sought to be enforced for or against the class is: (1) Joint, or common, or secondary in the sense that the owner of a primary right refuses to enforce that right and a member of the class thereby becomes entitled to enforce it; or (2) Several, and the object of the action is the adjudication of claims which do or may affect specific property involved in the action.[6]

This Code section has been interpreted to encompass the following requirements for class certification:[7] (1) numerosity — that the class is so numerous as to make it impracticable to bring all members before the court; (2) commonality — that there are questions of law and fact common to the class members which predominate over any individual questions; (3) typicality — that the claim of the named plaintiff is typical of the claims of the class members; (4) adequacy of representation — that the named plaintiff will adequately represent the interest of the class; and (5) superiority — that a class action is superior to other methods of fairly and efficiently adjudicating the

---

[3] 47 USC § 227 (a) (4).

[4] 47 USC § 227 (b) (3) (B).

[5] *ESI Ergonomic Solutions v. United Artists &c.*, 50 P3d 844, 850 (Ariz. 2002).

[6] OCGA § 9-11-23 (a).

[7] These same requirements are now expressly provided for in the 2003 rewritten version of the Code.

controversy.[8]

In determining the propriety of a class action, the issue to be resolved is not whether the plaintiff will ultimately prevail on the merits of the claim, but whether the requirements of OCGA § 9-11-23 have been met.[9] On appeal, a trial court's discretion in either granting or denying a motion to certify a class shall be respected unless abused.[10] In the instant case, we hold that the trial court abused its discretion in finding that Hammond has not satisfied the numerosity, commonality, typicality and superiority requirements for class certification in this TCPA action.[11]

a. **Numerosity**

Since the TCPA requires that the advertisement be unsolicited, the trial court reasoned that determining membership in Hammond's proposed class would require mini-hearings on whether or not each potential class member had invited or given permission for the transmission of the Carnett's advertisement. Based on that reasoning, the court jumped to the conclusion that Hammond has not satisfied the numerosity requirement for class certification.

The trial court's reasoning is flawed, first of all, because it focuses on the question of whether class members will prevail on the merits of their unsolicited facsimile advertisement claims. At this stage of determining whether to grant or deny class certification, the ultimate outcome on the merits of the claim is not an appropriate inquiry. Rather, the pertinent issue is only whether or not the requirements of OCGA § 9-11-23 have been met.[12]

Moreover, we fail to see any connection between the numerosity requirement and the question of whether Carnett's facsimile advertisements were unsolicited. The dispositive question with regard to numerosity is simply whether the persons constituting the class are so numerous as to make it impracticable to bring them all before the court.[13] That question has nothing to do with the substantive matter of whether or not the advertisements were unsolicited.

And as to the dispositive numerosity question, it is undisputed that Carnett's paid to have advertisements sent to 73,500 facsimile machines in the Atlanta area. The potential class based on the sheer number of facsimile advertisements allegedly sent is sufficiently numerous that it is impracticable to bring all class members before

---

[8] *Duffy v. The Landings Assn.*, 254 Ga. App. 506, 507-508 (1) (563 SE2d 174) (2002).

[9] Id. at 507 (1).

[10] Id.

[11] The trial court made no ruling on the question of the adequacy of Hammond's representation of the class.

[12] *Duffy*, supra at 507 (1).

[13] OCGA § 9-11-23 (a); *Duffy*, supra at 508 (1).

the court. Because the proposed class is so large, the trial court erred in finding that Hammond has not met the numerosity requirement.

b. **Commonality**

A class action is authorized if the members of the class share a common right, and common questions of law or fact predominate over individual questions of law or fact.[14] Here, the members of the proposed class share the common right of a claim under the TCPA for having received an unsolicited Carnett's advertisement on their facsimile machines. Not only do the class members' claims all arise from the identical course of conduct by Carnett's, but common questions about whether the advertisements at issue violate the TCPA and the amount of damages predominate over any individual issues.

The trial court, in finding a lack of commonality, again speculated that individual determinations as to whether any of the facsimile recipients expressly invited the facsimile might be necessary. We note that there is no evidence that Carnett's ever received permission to send any of the advertisements. More importantly, while the question of whether the advertisements were unsolicited is certainly critical to this case, we disagree with the trial court's conclusion that it somehow defeats class certification. On the contrary, that predominant question is common to all the class members and thus supports, rather than undermines, a finding of commonality.

We recognize that courts in other jurisdictions have used the same reasoning used by the trial court here to deny class certification in this sort of TCPA action.[15] Conversely, courts in yet other jurisdictions have granted class certification in precisely this type of unsolicited facsimile advertisement action under the TCPA.[16] The varying opinions of these other jurisdictions are instructive, as is a prior opinion from this court affirming the certification of a class under facts that are materially identical to the facts now before us.

In *Hooters of Augusta v. Nicholson*,[17] the plaintiff brought a class action alleging that the defendants had sent unsolicited advertisements to facsimile machines in violation of the TCPA. The trial court certified the class after concluding that the plaintiff had met the requirements of numerosity, commonality, typicality, adequacy of representation and superiority.[18] We affirmed the class certification,

---

[14] *UNUM Life &c. v. Crutchfield*, 256 Ga. App. 582 (568 SE2d 767) (2002).

[15] See *Livingston v. U. S. Bank*, 58 P3d 1088 (Colo. 2002); *Kenro, Inc. v. Fax Daily*, 962 FSupp. 1162 (S.D. Ind. 1997); *Forman v. Data Transfer*, 164 FRD 400 (E.D. Pa. 1995).

[16] *Kaufman v. ACS Systems*, 110 Cal. App. 4th 886 (2 Cal. Rptr.3d 296) (2003); *ESI Ergonomic Solutions*, supra.

[17] 245 Ga. App. 363 (537 SE2d 468) (2000).

[18] Id. at 368 (4).

finding no abuse of discretion by the trial court.[19]

Despite the similarities between *Hooters* and the instant case, the trial court in this case minimized the class certification in *Hooters* and tried to bolster its own lack of commonality finding by relying on another opinion from this court. The trial court cited *Schneider v. Susquehanna Radio Corp.*[20] for the proposition that a TCPA claim may be barred if the claimant had an "established business relationship" with the alleged TCPA violator. While *Schneider* did involve a TCPA claim, it was not an unsolicited facsimile advertisement claim, but was a claim brought under a section of the TCPA governing prerecorded telephone messages.[21] Thus, contrary to the trial court's finding, the holding in *Schneider* does not establish that the "established business relationship" exception applies to the claims at issue in this case.

Moreover, even if such an exception does apply, it does not mean that the class proposed by Hammond should not be certified. Just like the question of whether Carnett's facsimile advertisements were unsolicited, the question of an established business relationship exception would be common to the class and would therefore bolster the requirement that the common questions predominate any individual issues. Indeed, there need not be a complete absence of individual questions of law or fact as long as the common questions predominate.[22] And as in *Hooters,* the common questions in the instant case predominate over any individual questions.

c. **Typicality**

With respect to typicality, the trial court made no separate findings, and instead relied on its findings concerning commonality to conclude that Hammond's claims are not typical of the proposed class. Since we have rejected the trial court's commonality findings and conclusion, its lack of typicality finding must likewise be rejected. In fact, it is difficult to imagine a better example of the typicality requirement than this case. Hammond's claim that she received an unsolicited advertisement from Carnett's on her facsimile machine is not merely typical of, but is virtually identical to, the claims of every other class member. The trial court erred in finding that Hammond has not met the typicality requirement.

---

[19] Id.

[20] 260 Ga. App. 296 (581 SE2d 603) (2003).

[21] Id. at 297.

[22] *Trend Star Continental v. Branham,* 220 Ga. App. 781, 782 (1) (469 SE2d 750) (1996).

#### d. Superiority

The trial court also erred in finding that a class action is not superior to other available methods of achieving a fair and efficient adjudication of the controversy.

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.[23]

In this case, a class action is a superior method of adjudicating what would otherwise be some 73,500 identical TCPA claims for a mere $500. Under these circumstances, "there is simply no need to burden either the court system or the class members by requiring each member of the class to pursue his or her own action."[24]

#### 3. Motion to Compel Discovery

In its order denying class certification, the trial court noted that Hammond had filed a motion to compel Sunbelt to respond to Hammond's discovery requests. The court further stated in its order that it had previously indicated that Hammond's motion to compel would be granted following the hearing on her motion for class certification. But in light of its denial of class certification, the court reasoned, an order granting Hammond's motion to compel would serve no purpose.

Hammond now asks us to reverse the trial court's denial of her motion to compel discovery responses by Sunbelt. Given that the trial court's denial of the motion to compel was premised on its denial of class certification, which we are reversing, we agree with Hammond that there now appears to be no basis for the denial of her discovery motion. Accordingly, to the extent the trial court's denial of Hammond's motion to compel was premised on the denial of class certification, it is hereby reversed.

*Judgment reversed. Eldridge and Mikell, JJ., concur.*

DECIDED MARCH 12, 2004 — 

---

[23] (Citations and punctuation omitted.) *Amchem Products v. Windsor*, 521 U. S. 591, 617 (117 SC 2231, 138 LE2d 689) (1997).

[24] (Citations omitted.) *Trend Star Continental*, supra at 782-783 (1).

*Weissman, Nowack, Curry & Wilco, Ned Blumenthal, Marc B. Hershovitz, Michael K. Jablonski, Roy E. Barnes, John F. Salter, Jr.,* for appellant.

*Hicks, Casey & Barber, Richard C. Foster,* for appellee.

*Nall & Miller, Robert B. Hocutt, Mark D. Lefkow, Isaac Byrd, Sidney R. Barrett, Jr., Daniel S. Walsh,* amici curiae.