## S04G1241. CARNETT'S, INC. v. HAMMOND.
### (610 SE2d 529)

FLETCHER, Chief Justice.

Michelle Hammond brought a class action lawsuit against Carnett's, Inc. alleging that Carnett's violated the Telephone Consumer Protection Act (TCPA)[1] when its agent faxed 73,500 unsolicited advertisements to Atlanta area residents. The issue before us is whether the Court of Appeals correctly held that the trial court abused its discretion in denying Hammond's motion for class certification.[2] Because individual questions of law and fact predominate

---

[1] 47 USC § 227.

[2] *Hammond v. Carnett's, Inc.*, 266 Ga. App. 242 (596 SE2d 729) (2004).

over whether a recipient's fax was "unsolicited," and thus whether each recipient is properly part of the class, the trial court did not err in denying class certification and the Court of Appeals's decision must be reversed.

1. The TCPA prohibits "us[ing] any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine."[3] In April 2002, Carnett's, an Atlanta area car wash company, hired Sunbelt Communications and Marketing, LLC to fax advertisements for discount car washes to Atlanta area residents. On September 20, 2002, Hammond, a fax recipient, filed suit against Carnett's for violation of the TCPA.[4] She sought to certify a class consisting of all fax recipients who had not asked to be added to Carnett's or Sunbelt's distribution lists. On April 29, 2003, the trial court denied Hammond's motion for class certification, reasoning that whether each class member received an "unsolicited" fax would require individual inquiry. On March 12, 2004, the Court of Appeals reversed, and we granted certiorari.

2. As a preliminary matter, we agree with the Court of Appeals's ruling in *Hooters of Augusta, Inc. v. Nicholson*[5] that the TCPA reaches purely intrastate communications and provides a private right of action in state court unless prohibited by state law. As the Court of Appeals has also recognized, these private actions may be brought as class actions where the requirements of OCGA § 9-11-23 are met.[6] These requirements are:

> (1) numerosity — that the class is so numerous as to make it impracticable to bring all members before the court; (2) commonality — that there are questions of law and fact common to the class members which predominate over any individual questions; (3) typicality — that the claim of the named plaintiff is typical of the claims of the class members; (4) adequacy of representation — that the named plaintiff will adequately represent the interest of the class; and (5) superiority — that a class action is superior to other methods of fairly and efficiently adjudicating the controversy.[7]

---

[3] 47 USC § 227 (b) (1) (C).

[4] See *Hooters of Augusta, Inc. v. Nicholson*, 245 Ga. App. 363, 367 (537 SE2d 468) (2000) ("Under the TCPA, 'the entity or entities on whose behalf facsimiles are transmitted are ultimately liable for compliance with the [TCPA's] rule banning unsolicited facsimile advertisements.' ") (citing *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12407 (July 26, 1995)).

[5] Id. at 363-367.

[6] *Hammond*, 266 Ga. App. at 243; *McGarry v. Cingular Wireless, LLC*, 267 Ga. App. 23, 24 (599 SE2d 34) (2004).

[7] *Hammond*, 266 Ga. App. at 243-244 (interpreting version of OCGA § 9-11-23 in effect at

Although all of these requirements are important to consider, this case turns on the commonality requirement. The question answered by the Court of Appeals, and which is now before us, is whether the trial court abused its discretion in concluding that the commonality requirement was not met.

3. In determining whether the commonality requirement was met, we must analyze the elements of a TCPA violation and determine whether the class members were similarly situated. We undertake this analysis recognizing both that trial judges have broad discretion in deciding whether to certify a class[8] and that plaintiffs bear the burden of proving that class certification is appropriate.[9]

The TCPA is violated only if a plaintiff receives an "unsolicited" fax. Under the statute, "unsolicited" means transmitted without the recipient's "prior express invitation or permission."[10] This invitation or permission can be given orally or in writing.[11]

The Court of Appeals found no evidence that Carnett's or Sunbelt obtained express permission from the fax recipients.[12] But under Federal Communications Commission regulations, promulgated pursuant to the TCPA[13] and in effect at the time Carnett's faxes were sent,[14] express permission is also deemed given by those recipients having an "established business relationship" with Carnett's.[15] An established business relationship is defined as "a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity. . . ."[16]

---

the time Hammond's action was filed).

[8] *Trend Star Continental v. Branham*, 220 Ga. App. 781, 782 (469 SE2d 750) (1996); *Jones v. Douglas County*, 262 Ga. 317, 323 (418 SE2d 19) (1992) (trial court's discretion "in certifying or refusing to certify a class action is to be respected in all cases where not abused"); *Hooters of Augusta*, 245 Ga. App. at 367 ("The certification of a class action is a matter of discretion with the trial judge, and absent an abuse of that discretion, we will not disturb the trial court's decision.").

[9] *Jones*, 262 Ga. at 324.

[10] 47 USC § 227 (a) (4).

[11] *Livingston v. U.S. Bank, N.A.*, 58 P.3d 1088, 1091 (Colo. App. 2002) ("the TCPA does not require consent to be given in writing, and it may be given orally").

[12] *Hammond*, 266 Ga. App. at 245.

[13] See 47 USC § 227 (b) (2) (authorizing FCC to issue regulations interpreting ban and exemptions).

[14] The FCC eliminated this exemption effective July 1, 2005. 47 CFR § 64.1200 (a) (3) (i) (beginning July 1, 2005, invitation or permission must be "evidenced by a signed, written statement that . . . clearly indicates the recipient's consent to receive such facsimile advertisements from the sender").

[15] 47 CFR § 64.1200 (f) (9) (ii).

[16] 47 CFR § 64.1200 (f) (3).

Hammond argues that the established business relationship exemption does not exist because it is contrary to the clear statutory language of the TCPA. But the FCC regulations dictate otherwise,[17] and state courts must accept these as valid.[18] Cases from Georgia and other jurisdictions have also held that this exemption exists.[19]

4. Having determined that the established business relationship exemption exists, we must now determine whether it is sufficient to defeat commonality under the facts of this case. The FCC has opined that the established business relationship exemption is broad[20] and that "[y]ou have an established business relationship with a person or entity if you have made an inquiry, application, purchase, or transaction regarding products or services offered by such person or entity."[21] While we need not determine the precise parameters of this exemption, the definition of an established business relationship in the FCC rules, as well as the above-cited FCC pronouncements, suggest that even one car wash at Carnett's would likely suffice.[22]

---

[17] *FCC Reminds Consumers About Junk Fax Prohibition*, 16 FCC Rcd. 4524, 4524 (Feb. 20, 2001) ("An established business relationship . . . demonstrates consent to receive fax advertisement transmissions."); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 16972, 16975 (Aug. 18, 2003) ("until the amended rule . . . becomes effective . . . an established business relationship will continue to be sufficient to show that an individual or business has given express permission to receive facsimile advertisements"); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 14128, n. 699 (July 3, 2003) ("We emphasize that, prior to the effectuation of the rules contained herein, companies that transmitted facsimile advertisements to customers with whom they had established business relationships were in compliance with the Commission's existing rules.").

[18] 28 USC § 2342 ("The court of appeals . . . has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of — (1) all final orders of the Federal Communications Commission made reviewable by section 402 (a) of title 47. . . ."); *FCC v. ITT World Communications*, 466 U. S. 463, 468 (104 SC 1936, 80 LE2d 480) (1984); *Consol. Tel. Coop. v. W. Wireless Corp.*, 637 N.W.2d 699, 707 (N.D. 2001) ("Unless the FCC's rulings and regulations have been appropriately challenged in the proper federal forum, we are not at liberty to review the FCC's statutory interpretation even if we doubted its soundness, and we must apply the rulings and regulations as written.").

[19] See, e.g., *McGarry*, 267 Ga. App. at 26 ("the Federal Communications Commission, the agency charged with enforcing the TCPA, expressly recognized that an 'established business relationship' could establish consent to receive facsimiles"); *Accounting Outsourcing, LLC v. Verizon Wireless Personal Communications*, 329 FSupp.2d 789, 808 (M.D. La. 2004) ("For over ten years, the FCC's rule was that an established business relationship was deemed to be invited or permitted by the recipient.").

[20] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, 8771 (Oct. 16, 1992) ("Many commentators concur with our tentative conclusion that a business relationship should be defined broadly. . . . Based on this proceeding and the legislative intent to address a broad range of business relationships in the rules, we adopt our tentative conclusion.").

[21] *Common Carrier Scorecard, Consumer Information About Telephone-Related Issues*, November 1998, www.fcc.gov/Bureaus/Common_Carrier/Reports/scard98.pdf, at 22. An established business relationship can be terminated "by telling the person or entity that you do not want any more unsolicited advertisements sent to your fax machine." Id.

[22] The exemption may also extend to Carnett's affiliates. 47 CFR § 64.1200 (f) (3) (ii)

Although the faxes were not targeted to Carnett's customers,[23] they were sent to residents in the areas where Carnett's does business. Therefore, at least some fax recipients likely had an established business relationship with Carnett's. Hammond did not exclude these individuals from the proposed class, and thus failed to prove that the class members were similarly situated in that they all received "unsolicited" faxes.[24] Accordingly, the trial court was within its discretion to deny class certification based on a lack of commonality.

The Court of Appeals sidestepped this issue by holding that the "predominant *question* [of solicitation] is common to all the class members and thus supports, rather than undermines, a finding of commonality."[25] But a common question is not enough when the *answer* may vary with each class member and is determinative of whether the member is properly part of the class.[26] Hammond argues that answering the question of solicitation now is an inappropriate inquiry into the merits at the class certification stage.[27] But the question of solicitation is both a merits question and a class question, and thus the trial court acted within its discretion in reaching it.

---

("subscriber's established business relationship with a particular business entity does not extend to affiliated entities *unless* the subscriber would reasonably expect them to be included given the nature and type of goods or services offered by the affiliates and the identity of the affiliate") (emphasis supplied); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, 8771 (Oct. 16, 1992) ("a consumer's established business relationship with one company may also extend to the company's affiliates and subsidiaries").

[23] Hammond argues that the faxes must have been targeted to Carnett's customers for the established business relationship exemption to apply, but that is not required. *Schneider v. Susquehanna Radio Corp.*, 260 Ga. App. 296, 301 (581 SE2d 603) (2003) ("The determinative test is not the caller's intention in placing the call but 'the consumer's expectation of receiving the call.'"). The legislative history reveals that the established business relationship exemption was added both so that businesses could build upon prior relationships with customers and because such customers have a reasonable expectation of being contacted. H. R. Rep. 102-317, 102d Cong., 1st Sess. (1991) at 14-15. To mandate a "because of" requirement as Hammond proposes is inappropriate because it ignores the reasonable expectations rationale.

[24] Contrary to Hammond's assertion, she bears the burden of proving that a fax was unsolicited – Carnett's does not bear the burden of establishing permission. In other words, non-solicitation is an element of a TCPA violation – permission is not an affirmative defense. Compare 47 USC § 227 (c) (5) (creating an affirmative defense to liability under the "do not call" provision).

[25] *Hammond*, 266 Ga. App. at 245 (emphasis supplied).

[26] *Tanner v. Brasher*, 254 Ga. 41, 45 (326 SE2d 218) (1985) ("Where the *resolution* of individual questions plays . . . an integral part in the determination of liability, a class action suit is inappropriate.") (emphasis supplied).

[27] See *Sta-Power Indus. v. Avant*, 134 Ga. App. 952, 954 (216 SE2d 897) (1975) ("[I]n determining the propriety of a class action, the first issue to be resolved is not whether the plaintiffs have stated a cause of action or may ultimately prevail on the merits but whether the requirements of [OCGA § 9-11-23] have been met.").

5. Finally, courts in other jurisdictions have held that individual questions of whether fax recipients gave their oral or written permission rendered class certification inappropriate without even reaching the established business relationship issue.[28] While our holding today does not go so far, we note that these decisions support our conclusion that the trial court did not abuse its discretion under the facts of this case.

6. Hammond also asks, in the alternative to affirming the Court of Appeals's decision on certification, that this Court remand the case so that she may conduct further discovery. She argues that she attempted to obtain a list of the fax recipients from Sunbelt, and that the trial court abused its discretion by failing to allow discovery to proceed while taking the motion for class certification under consideration. The Court of Appeals reversed the trial court's denial of Hammond's motion to compel discovery.[29]

If Hammond had timely attempted discovery for the purpose of determining and excluding potential class members having established business relationships with Carnett's, we would be sympathetic to this argument. But Hammond never sought discovery as to this issue — instead, she relied on her argument that the established business relationship exemption did not exist. Also, the trial court asked Hammond whether it would be premature to rule on class certification without further discovery, and Hammond elected to proceed without delay. A "party cannot complain of a judgment, order, or ruling that his own conduct produced or aided in causing."[30] Therefore, the trial court did not abuse its discretion in denying Hammond's request for further discovery, and the Court of Appeals's decision on this issue must also be reversed.

*Judgment reversed. All the Justices concur, except Benham, J., not participating.*

---

[28] *Kondos v. Lincoln Property Co.*, 110 S.W.3d 716 (Tex. App. 2003); *Livingston*, 58 P.3d at 1088; see also *Forman v. Data Transfer*, 164 F.R.D. 400, 404 (E.D. Pa. 1995); *Kenro, Inc. v. Fax Daily, Inc.*, 962 FSupp. 1162, 1169 & n. 6 (S.D. Ind. 1997) (although at least one case, *Nicholson v. Hooters of Augusta*, 136 F.3d 1287, modified, 140 F.3d 898 (11th Cir. 1998), held that federal courts lack subject matter jurisdiction over private causes of action under the TCPA). In the present case, after acknowledging the foregoing cases, the Court of Appeals stated that "courts in yet other jurisdictions have granted class certification in precisely this type of unsolicited facsimile advertisement action under the TCPA." *Hammond*, 266 Ga. App. at 245. But neither of the cases cited in support, *Kaufman v. ACS Systems*, 2 Cal. Rptr. 3d 296 (Cal. App.4th 2003) nor *ESI Ergonomic Solutions v. United Artists &c.*, 50 P.3d 844 (Ariz. 2002), addressed the commonality issue. Moreover, neither of these cases actually granted class certification – they both reversed, on other grounds, lower court decisions denying certification.

[29] *Hammond*, 266 Ga. App. at 247.

[30] *Imperial Massage & Health Studio v. Lee*, 231 Ga. 482, 482 (202 SE2d 426) (1973).

DECIDED MARCH 14, 2005 —
RECONSIDERATION DENIED MARCH 28, 2005.

*Bondurant, Mixson & Elmore, Michael B. Terry, Frank M. Lowrey IV, Hicks, Casey & Barber, Mark W. Wortham, Richard C. Foster*, for appellant.

*Marc B. Hershovitz, Roy E. Barnes, Weissman, Nowack, Curry & Wilco, Ned Blumenthal, Michael K. Jablonski*, for appellee.

*Hall, Booth, Smith & Slover, Mark A. Barber, Annette F. Simelaro, Hill, Kertscher & Wharton, Douglas R. Kertscher, Thurbert E. Baker, Attorney General, Isaac Byrd, Deputy Attorney General, Sidney R. Barrett, Jr., Daniel S. Walsh, Assistant Attorneys General*, amici curiae.