## A09A1510. DIALLO et al. v. AMERICAN INTERCONTINENTAL UNIVERSITY, INC. et al.

(687 SE2d 278)

PHIPPS, Judge.

As former students of American InterContinental University, Inc., Tajuansar Diallo, Daretha Bell, Elizabeth McKinnon, Shamond Smith, Jessica Godbee, Ronnecia Jones, and Terry Cannon sued the school and its alleged parent company, Career Education, Inc. (collectively AIU). Among their allegations, they claimed that AIU had engaged in fraudulent practices to recruit them and thousands of other individuals to enroll in the school. The named students filed a motion seeking certification of two classes of plaintiffs. After a hearing, their motion was denied. The named students appeal the denial of their motion, but have shown no abuse of discretion. We affirm.

It is uncontested that there were two school campuses at issue, the Buckhead and Dunwoody locations; that the school offered numerous programs of study, such as fashion design, interior design, international business, fashion marketing, technology management, media production, and visual communications; and that the school offered several types of degrees, such as associate, bachelor's, and master's. It also is uncontested that the school was continuously accredited by the Southern Association of Colleges and Schools (SACS) since 1987.

In their lawsuit, which was filed in March 2008, the named students alleged that since 2001, the year Career Education became a parent corporation of the school, AIU had induced them and others to enroll in the school by making false representations. More particularly, they claimed that AIU had obtained and maintained accreditation for the school by making false representations to SACS. They also claimed that AIU had published fraudulently inflated employment rates for the school's graduates. The named students complained that, notwithstanding the school's SACS accreditation and the touted employment rates, "a degree from AIU is simply not worth the cost" and the school's graduates have had a difficult time finding jobs in their respective fields of study. Accordingly, they claimed they were entitled to damages because they had paid tuition to AIU; had incurred loans, plus interest thereon, to pay tuition; and had been unable to find employment in their respective fields of study.

In their class certification motion, the named students sought to serve as representatives of two classes, which they described as: (1) "All students who attended AIU in Georgia from 2001 to the present and received any financial aid based on AIU's status of accreditation" (hereinafter Accreditation Class); and (2) "All students who

attended AIU in Georgia from 2001 to the present who received copies of AIU's published employment rates, whether in the Student Handbook or otherwise'' (hereinafter Employment Class).

To obtain class action certification, the named individuals are required to satisfy all four prerequisites of OCGA § 9-11-23 (a), which are commonly referred to as (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. In addition, the named individuals are required to meet at least one of the requirements set forth in the three paragraphs of OCGA § 9-11-23 (b). In the instant case, the named students sought class action certification under OCGA § 9-11-23 (b) (3). And under that Code provision, the named individuals must show, among other things, that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members."[1]

In denying the named students' motion with respect to both classes, the trial court determined that this predominance requirement, inter alia, had not been satisfied.

> Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief. Where, after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under [OCGA § 9-11-23 (b) (3)].[2]

A trial court may deny class certification where a plaintiff fails to establish even one of the required factors listed in OCGA § 9-11-23 (a) and (b).[3] A trial court's discretion "in certifying or refusing to certify a class action is to be respected in all cases where not abused."[4]

1. The named students contend that the trial court erred by refusing to certify the requested Accreditation Class for purposes of pursuing their fraud claim.

"The tort of fraud has five elements: a false representation by a

---

[1] OCGA § 9-11-23 (b) (3).

[2] *Rollins, Inc. v. Warren*, 288 Ga. App. 184, 187 (1) (653 SE2d 794) (2007) (citation and footnote omitted).

[3] *Roland v. Ford Motor Co.*, 288 Ga. App. 625, 628 (1) (655 SE2d 259) (2007); see *Carnett's, Inc. v. Hammond*, 279 Ga. 125, 129 (4) (610 SE2d 529) (2005) (trial court was authorized to deny class certification based on a lack of commonality); *Rollins, Inc.*, supra at 192 (1) (reversing grant of class certification where predominance requirement was not met).

[4] *Jones v. Douglas County*, 262 Ga. 317, 323 (2) (418 SE2d 19) (1992) (citation omitted).

defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff."[5] The named students further relied on the principle that "the misrepresentation need not be to the plaintiff, but may be to someone on whom the plaintiff relies."[6] Thus, they set forth the following as their theory: AIU had fraudulently induced SACS to issue accreditation, knowing that the named students (and others who enrolled in the school) would rely upon the accreditation in obtaining federally backed loans to pay the school's tuition.[7]

The trial court's determination that the predominance requirement had not been met stemmed from, inter alia,[8] issues related to reliance and causation.[9] The trial court found that individual assessments would be needed to ascertain, for example, any reliance each putative class member had placed upon the school's SACS-accredited status in electing to enroll; which SACS accreditation requirements were pertinent to that class member; and whether AIU's alleged failure to meet one or more such requirements had resulted in injury to that individual.

The record authorized the trial court's determination that predominance was not established. Notably, the named students did not specifically link the manner(s) in which AIU allegedly failed to

---

[5] *Crawford v. Williams*, 258 Ga. 806 (375 SE2d 223) (1989) (citation omitted).

[6] *Potts v. UAP-GA Chem, Inc.*, 256 Ga. App. 153, 155-156 (1) (567 SE2d 316) (2002) (where an employer falsely told an employee's treating physician that the employee had not been exposed to toxic chemicals and the physician thereafter lessened the toxic chemical antidote, leading to the employee's death, the reliance element of the estate's fraud claim against the employer was shown because a jury could find that the physician's reliance on the employer's false statement was reasonable and that the employee had relied on the physician for treatment).

[7] See *Fla. Rock & Tank Lines v. Moore*, 258 Ga. 106, 107 (4) (365 SE2d 836) (1988) (requirement of reliance is satisfied where "A, having as his objective to defraud C, and knowing that C will rely upon B, fraudulently induces B to act in some manner on which C relies, and whereby A's purpose of defrauding C is accomplished"). Here, the named students assert that AIU (party A) fraudulently induced SACS (party B) to issue accreditation, knowing that the putative class members (party C) would rely upon the accreditation in obtaining federally backed loans to pay AIU tuition.

[8] The trial court also noted issues related to the statue of limitation. While the complaint was filed in March 2008, the named students were seeking to represent students who had attended the school beginning in 2001 by claiming that the applicable statute of limitation should be tolled due to their delay in discovering the alleged misrepresentations. The trial court found that applying the equitable tolling doctrine would also require individualized inquiries to determine whether each otherwise time-barred class member knew or should have known of the alleged fraud. Given our analysis and conclusion in this Division, we need not reach this finding.

[9] See *Carnett's, Inc.*, supra (in ruling on a class certification motion, trial court may consider the merits of the action sought to be certified to the degree necessary to determine whether the requirements of OCGA § 9-11-23 are satisfied); *McGarry v. Cingular Wireless*, 267 Ga. App. 23, 25 (1) (599 SE2d 34) (2004) (recognizing that class determinations generally involve considerations that are enmeshed in the factual and legal issues comprising the plaintiffs' cause of action).

YALE LAW LIBRARY

merit SACS's accreditation to any particular program of study at the school during the seven years at issue. Instead, in their complaint, the named students broadly stated that AIU was "on the verge of losing its accreditation" during a two-year probation period. Similarly, in their appellate brief, they maintain that AIU lied to SACS concerning: the "qualifications of [the school's] faculty"; the "facilities and equipment available to students"; the "recruiting policies"; the "process used to determine if students are able to benefit from the education"; and the "financial interests of the governing board."

Nor did the named students specify how any individual's education was adversely affected by AIU's alleged misrepresentations to SACS. Instead, they broadly asserted in their complaint, as set forth above, that a degree from the school was "not worth the cost." Similarly, at the hearing on their motion, they asserted that prospective class members had been lured to AIU to obtain a "good education" that would lead to a "great job," but they discovered later that their education was not "up to the quality of an accredited university," and consequently, they were unable to find jobs. They further summarized at the hearing that AIU had promised a "Cadillac" education, but delivered a "Yugo" education. And in their appellate brief, the named students maintain that they were defrauded by AIU's claims of offering an education with the "qualities and characteristics of a fully accredited institution."[10]

The putative Accreditation Class members would have comprised students who had pursued numerous and varied programs of study over the course of at least seven years. It is uncontested that during those years, the school maintained its SACS accreditation. Nevertheless, the named students complain essentially that AIU failed to provide the quality of education one should expect from an accredited school. Determining whether, and to what extent, each putative class member's "quality of education" was adversely affected by some aspect of the school's operations, and which aspect would have resulted in the school's losing its accreditation had SACS not been misled, would "require a separate mini-trial, rendering the

---

[10] Issues concerning whether the named students actually are seeking to recover for what is generally known as "educational malpractice" and whether Georgia recognizes such a cause of action are not before us. See generally *Alsides v. Brown Institute, Ltd.*, 592 NW2d 468, 471-474 (I) (Minn. Ct. App. 1999) (noting that the majority of courts have rejected claims that attack the general quality of education provided to students, generally known as educational malpractice, and further analyzing the numerous reasons for so rejecting), citing *Ross v. Creighton Univ.*, 957 F2d 410, 414 (II) (B) (1) (7th Cir. 1992); *Christensen v. Southern Normal School*, 88 FSupp.2d 1306 (M.D. Ala. 2000) (questioning whether students' numerous claims, including fraud, constituted an improper attempt to circumvent the principle that there was no cognizable cause of action for educational malpractice in that state).

entire process unwieldy."[11]

Moreover, in opposing class certification, AIU cited deposition testimony that the named students, themselves, had given differing reasons for having chosen the school to pursue their respective programs of study. Those reasons included the school's accreditation status — albeit not necessarily by SACS, but also the school's location, course equipment, professors, demographics, curriculum, study-abroad and internship programs; accelerated graduation time frames; and recommendations of friends who had attended the school. Furthermore, as the trial court noted, even while AIU was on accreditation probation from December 2005 until December 2007 — which status was posted on SACS's website — putative class members continued to enroll at and attend the school.

The foregoing circumstances authorized the trial court's conclusion that the question whether AIU is liable for having fraudulently induced individuals to enroll at the school would "require a highly individualized, case-by-case determination as to each putative class member."[12] Given the need for a great deal of individualized proof as to issues of reliance and causation, the trial court did not abuse its discretion in concluding that the predominance requirement was not met.[13]

The named students attempt to surmount these problems by citing a fact common to each putative class member — each incurred debt in connection with a federal loan program. The named students assert that the school was required to be accredited, as it was here by SACS, for its students to be eligible for federal financial aid. They argue that the reliance element was therefore established because "100% of the proposed class relied on AIU's false statement of accreditation as a matter of federal law by receiving federal financial aid." Similarly, they argue that causation is established because, but for "AIU's false accreditation, no member of the prospective class would have been saddled with loans that they now are required to repay."

Even assuming that there was a link between misrepresentations by AIU to SACS and the debts incurred by students in order to pay tuition, the trial court was not required to find that this common circumstance dispensed with the need for individualized inquiries as

---

[11] See *Rollins, Inc.*, supra at 188 (finding that whether pest exterminating company provided inadequate or worthless annual reinspections of a customer's real property was highly individualized inquiry, since adequacy would depend on what a particular inspector did or did not do at a particular customer's property and on the thoroughness of that inspection).

[12] Id. at 187-188 (citation omitted).

[13] Id. at 186-192.

YALE LAW LIBRARY

noted above.[14] Moreover, notwithstanding that the named students had set forth a theory to include student loans, the gravamen of their fraud claim was that they paid tuition to AIU for an education with the "qualities and characteristics" of an institution accredited by SACS, which AIU allegedly did not deliver. Notwithstanding the existence of a classwide fact of having also incurred debt to pay tuition — albeit under a program dependent upon the school's accredited status, "[the named students] must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims."[15] Stated differently, the common fact that each prospective class member so incurred debt did not demand a conclusion that the predominance requirement was met.[16]

2. The named students contend that the trial court abused its discretion in denying their motion to certify the Employment Class for purposes of pursuing their fraud claim.

At the hearing, the named students reiterated that their tort theory, relating to allegedly inflated employment rates, was based upon *written* misrepresentations. More specifically, beginning in 2006, AIU began including employment rates of graduates in the school's student handbooks, which they claimed AIU provided to all students before tuition was paid.[17] And prior to 2006,[18] documents reporting employment rates were maintained in the school's admissions office and made available upon a prospective student's request.

---

[14] See id. at 188 (although the contracts at issue may have placed a uniform duty upon the pesticide company to provide all its customers with annual reinspections, individual issues nonetheless predominated where liability on each customer's reinspection claim had to be determined on a highly individualized basis).

[15] Id. at 187 (citation and footnote omitted); see id. at 188 (common issues of fact and law predominate if they have a "direct impact on every class member's effort *to establish liability*") (emphasis supplied); see also *Rutstein v. Avis Rent-A-Car Systems*, 211 F3d 1228, 1234 (II) (A) (11th Cir. 2000) (under Federal Rule of Civil Procedure 23, the predominance inquiry focuses on the legal or factual questions that qualify each class member's cause as a *genuine controversy*, and is far more demanding than the commonality requirement; whether an issue predominates can be determined only "after considering what value the resolution of the class-wide issue will have in each class member's *underlying cause of action*") (citation omitted; emphasis supplied); see further *State Farm &c. Ins. Co. v. Mabry*, 274 Ga. 498, 499 (1) (556 SE2d 114) (2001) (noting that the appellate courts of Georgia have relied on the federal rules when construing Georgia's class action statute).

[16] *Rollins, Inc.*, supra at 190 (generalized evidence did not cure need for highly individualized evidence); *Rutstein*, supra at 1235-1236 (III) (A) (individual issues predominated when each putative class member would have to present highly individualized proof of the defendant's liability, given that the plaintiffs' generalized pattern and practice evidence could not establish the defendant's liability as to any one particular class member).

[17] According to AIU, the student handbooks for the two campuses did not include these rates until the summer of 2006.

[18] According to AIU, such documents with employment rates were first produced in May 2005.

In determining that the predominance requirement had not been shown, the trial court cited, inter alia,[19] issues related to the reliance and causation principles. The trial court found that individualized inquiries would be needed to determine whether each putative class member had relied upon the allegedly inflated employment data and whether that reliance had resulted in damages.

The record authorized the trial court's determination. The putative Employment Class members would have comprised students who had pursued numerous and varied programs of study at both campuses over several years. As the trial court noted, the employment data was specific for each year, to each campus, and then to each program. Reviewing one set of employment data, the court noted that while some of the employment rates were seemingly impressive, others were not. In the latter category, the trial court placed: (i) television production (Buckhead) = 34.29%; (ii) criminal justice (Dunwoody) = 45.45%; and (iii) visual communication (Buckhead) = 47.37%. Indeed, the named students deposed to a variety of reasons for deciding to enroll in the school. Moreover, AIU presented affidavits from other former students who had enrolled in the school since 2001; they testified that their decisions to enroll at the school had not been influenced by any employment data; one such student further testified that he had graduated from the school and since worked in his field of study. In contrast, as the trial court noted, three of the named students had dropped out and consequently not completed their programs of study.

Given the great deal of individualized proof necessary to establish elements of the fraud claim, the trial court did not abuse its discretion in determining that the predominance requirement was not met.[20] The named students cite *Liberty Lending Services v. Canada*[21] for the proposition that "in claims of fraud based upon *written* representations, the reliance element may sometimes be presumed."[22] Given the numerous variables involved here, however, a different result is not compelled.

3. Citing OCGA § 9-11-23 (f) (3),[23] the named students complain

---

[19] The trial court also noted issues related to the statute of limitation. See generally footnote 8, supra. Given our analysis and conclusion in this Division, we need not reach the trial court's finding.

[20] See *Rollins, Inc.*, supra (where liability turned on highly individualized facts, predominance requirement was not met).

[21] 293 Ga. App. 731 (668 SE2d 3) (2008).

[22] Id. at 741 (4) (citation and punctuation omitted; emphasis supplied).

[23] That paragraph provides:
    When deciding whether a requested class is to be certified, the court shall enter a written order addressing whether the factors required by this Code section for certification of a class have been met and specifying the findings of fact and

YALE LAW LIBRARY

that the trial court failed to specifically address each of the factors enumerated in OCGA § 9-11-23 (b) (3) regarding its superiority requirement. While the better practice may have been for the trial court to address each factor and to set out separate findings, no reversible error occurred and there is no need to vacate the contested ruling and remand the case.[24] Even though the trial court's order did not specifically address certain of the cited factors, it expressly stated that the named students "have failed to meet the . . . superiority requirements of class certification for either of the proposed classes." Moreover, the named students do not assert that, in denying their motion, the trial court's order failed to specifically address the predominance requirement. "A trial court may deny class certification where a plaintiff fails to establish even one of the required [OCGA § 9-11-23] factors."[25] Under the circumstances presented here, "[w]e cannot say, therefore, that the order provides 'no basis to evaluate whether the trial court properly exercised its discretion' in deciding the issue of class certification, as was the case in *Griffin Indus. v. Green.*"[26]

*Judgment affirmed. Smith, P. J., and Bernes, J., concur.*

DECIDED NOVEMBER 23, 2009.

*Wargo & French, Sarah H. Walsh, David M. Pernini*, for appellants.

*Greenberg Traurig, Ernest L. Greer, Michael E. Ross, Eric S. Fisher*, for appellees.

---

conclusions of law on which the court has based its decision with regard to whether each such factor has been established. In so doing, the court may treat a factor as having been established if all parties to the action have so stipulated on the record.

[24] See *Roland*, supra at 628 (1).

[25] Id.

[26] Id. at 628-629, quoting *Griffin Indus. v Green*, 280 Ga. App. 858, 860 (1) (635 SE2d 231) (2006) (vacating *grant* of motion for class certification and remanding case for entry of a more detailed order addressing whether the factors for class certification were met and specifying the findings of fact and conclusions of law supporting the decision).