A09A2114. PEREZ v. ATLANTA CHECK CASHERS, INC. et al.
(692 SE2d 670)

BERNES, Judge.
Julian Perez appeals from the trial court's denial of his motion for class certification in this action filed against his former employer,

---

Atlanta Check Cashers, Inc. ("Atlanta Check"), and several other defendants, alleging claims for identity fraud, conspiracy to commit identity fraud, invasion of privacy, and violation of the Georgia Racketeer Influenced and Corrupt Organizations Act ("RICO"). Because there was some evidence to support the trial court's finding that individual factual issues would predominate over any common issues the class might share, the trial court did not abuse its discretion in denying class certification.

The record shows that Atlanta Check employed Perez as a customer service representative from May 2006 to November 2007. Perez's duties included cashing customer checks, making bill payments for customers, sending money orders for customers, selling lottery tickets, and selling property and casualty insurance products. The insurance products were offered and sold to customers through Atlanta Check's business arrangement with its affiliate, Super Auto Insurance Agency, Inc. Under the arrangement, Atlanta Check employees would become licensed limited subagents for Super Auto so that they would be authorized to sell the insurance products to customers under Georgia law.

Georgia law forbids a person from selling, soliciting, or negotiating insurance for any class of insurance unless that person is properly licensed as an agent for that class of insurance in accordance with the Georgia Code and applicable regulations. See OCGA § 33-23-4 (a). However, a person can become a "limited subagent" under the sponsorship of a licensed insurance agent by making proper application to the Georgia Commissioner of Insurance (the "Commissioner"). See OCGA § 33-23-12 (a); Ga. Comp. R. & Regs. r. 120-2-3-.31 (2009). As part of the application process for becoming a limited subagent, the applicant must complete a form questionnaire in which he or she provides a social security number and other personal identifying information, sign his or her name, and have the signature notarized; have his or her sponsoring agent complete and sign a "Sponsor's Certification"; and submit a certificate reflecting that he or she has completed 20 hours of instruction in an approved prelicensing course. See Ga. Comp. R. & Regs. rr. 120-2-2-.14 (1) (d), (e); 120-2-3-.08 (2); 120-2-3-.31 (2) (d). After obtaining a limited subagent license, the applicant may renew the license annually, provided, among other things, that he or she submits evidence of at least five hours of continuing education ("CE") each year. See Ga. Comp. R. & Regs. r. 120-2-3-.31 (5).

Perez was not aware that Georgia law requires that an individual be licensed to sell insurance. After his employment with Atlanta Check was terminated for unrelated reasons, Perez learned for the first time that on July 5, 2007, Super Auto had submitted an application for a limited subagent license in his name to the

Commissioner. The application listed his name, birth date, and social security number, and provided as his business address the street address of the Atlanta Check location where he worked. The application contained Perez's purported signature and was notarized by an Atlanta Check employee. The application included a "Sponsor's Certificate" and a "Certificate of Completion" averring that in June 2007, Perez had completed a 20-hour prelicensing course taught by H. David Emmett, the owner of Spare Time, Inc.

According to Perez, he did not complete the subagent application that was submitted in his name or authorize anyone to complete it for him, did not consent to the release of his personal identifying information contained in the application, and did not sign the application. He claimed that his purported signature on the application was not in fact his signature. Perez further maintained that he had never met his purported sponsoring agent. Lastly, he asserted that he never attended the 20-hour prelicensing course referenced in the Certificate of Completion.

Perez thereafter sued Atlanta Check, Super Auto, Emmett, and Spare Time, individually and on behalf of a class of former and current Atlanta Check employees.[1] The potential class was defined as

> those similarly situated former and current employees of [Atlanta Check] whose identifying information was intentionally, wilfully and fraudulently, *without authorization or consent*, created, used or possessed with intent to fraudulently use, by [the defendants] in any filings with the [Commissioner].

(Emphasis supplied.) The complaint alleged that the personal identifying information of Perez and the putative class members had been obtained, used, and submitted to the Commissioner without permission in falsified and forged documentation as part of a conspiracy to evade the proper subagent licensing process. The complaint sought monetary damages as well as declaratory and injunctive relief and set out claims for identity fraud, OCGA §§ 16-9-121 (a) (1), 16-9-130 (a); conspiracy to commit identity fraud, OCGA § 16-9-122; invasion of privacy for misappropriation of name and likeness; and violation of Georgia RICO, OCGA § 16-14-1 et seq.

Following discovery on the class certification issue, Perez introduced into the record limited subagent license applications and corresponding certifications regarding prelicensing courses that Super Auto had submitted to the Commissioner for 196 former and

---

[1] Perez also sued several "John Doe" defendants who were alleged to be employees of Atlanta Check, Super Auto, or Spare Time.

current Atlanta Check employees. Perez also introduced evidence regarding the state-required CE courses allegedly taken by many of those employees that had been submitted to the Commissioner. Perez contended that these former and current Atlanta Check employees were members of the potential class and moved for class certification of the monetary damages claims under OCGA § 9-11-23 (b) (3) ("Rule 23"). He also moved for certification of the claims for declaratory and injunctive relief under Rule 23 (b) (2).

After conducting an evidentiary hearing, the trial court denied the motion for class certification. The trial court found that the factual issue of whether the limited subagent license applications and other documentation had been submitted to the Commissioner *without the authorization or consent* of the Atlanta Check employees could not be established "without providing a great deal of individualized proof, thereby negating the purpose and function of class certification." Based upon this finding, the trial court concluded that class certification was inappropriate because individual factual issues would predominate over any common factual issues.[2] This appeal followed.

Perez contends that the trial court abused its discretion in declining to certify the monetary damages claims under Rule 23 (b) (3).[3] We disagree.

The requirements for certifying a class are set forth in OCGA § 9-11-23. See *Peck v. Lanier Golf Club*, 298 Ga. App. 555, 556-557 (680 SE2d 595) (2009). The burden is on the named plaintiff to demonstrate that the prerequisites for class certification have been satisfied. See *Carnett's, Inc. v. Hammond*, 279 Ga. 125, 127 (3) (610 SE2d 529) (2005). "A trial court may deny class certification where a plaintiff fails to establish even one of the required Rule 23 factors," *Roland v. Ford Motor Co.*, 288 Ga. App. 625, 628 (1) (655 SE2d 259) (2007), and we will affirm the trial court's decision absent an abuse of discretion. See id. at 627. A trial court's denial of class certification, moreover, will be affirmed if right for any reason. See *Duffy v.*

---

[2] The trial court also concluded that class certification was inappropriate based upon its factual findings that Perez's specific claims were not typical of the class and that Perez was not an adequate class representative. We need not reach these additional findings in light of our decision in this case.

[3] Perez does not enumerate as error the trial court's denial of class certification of the claims for declaratory and injunctive relief under Rule 23 (b) (2). Nonetheless, Perez argues for the first time in his reply brief that the trial court erred in failing to certify a class under Rule 23 (b) (2). We decline to address this argument because a party may not use his reply brief "to expand his enumeration of errors by arguing the incorrectness of a trial court's ruling not mentioned in the enumeration." *Anderson v. State*, 251 Ga. App. 785 (554 SE2d 811) (2001). See also *Currid v. DeKalb State Court Probation Dept.*, 274 Ga. App. 704, 707 (1), n. 8 (618 SE2d 621) (2005) (refusing to consider legal and factual arguments raised for first time in reply brief).

*The Landings Assn.*, 254 Ga. App. 506, 509 (1) (563 SE2d 174) (2002).

> Before claims can be certified for class adjudication under Rule 23 (b) (3), the plaintiff must show, among other things, that there are questions of law and fact common to the class members which predominate over any individual questions. Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief. Where, after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23 (b) (3).

(Citations and punctuation omitted.) *Rollins, Inc. v. Warren*, 288 Ga. App. 184, 186-187 (1) (653 SE2d 794) (2007). "[A] common question is not enough when the *answer* may vary with each class member and is determinative of whether the member is properly part of the class." (Emphasis in original.) *Carnett's, Inc.*, 279 Ga. at 129 (4). See also *Tanner v. Brasher*, 254 Ga. 41, 45 (2) (326 SE2d 218) (1985) ("Where the resolution of individual questions plays . . . an integral part in the determination of liability, a class action suit is inappropriate.").

There was some evidence to support the trial court's determination that individual factual issues would predominate in this case. As the trial court pointed out, and Perez does not dispute, all of his claims require proof that the limited subagent license applications and other documentation were submitted to the Commissioner without the authorization or consent of the former and current Atlanta Check employees who are the proposed class members. See OCGA § 16-9-121 (a) (1) ("A person commits the offense of identity fraud when he or she willfully and fraudulently . . . *[w]ithout authorization or consent,* uses or possesses with intent to fraudulently use, identifying information concerning an individual[.]") (emphasis supplied); *Martin Luther King, Jr. Center &c. v. American Heritage Products*, 250 Ga. 135, 143 (1) (296 SE2d 697) (1982) (concluding that the tort of invasion of privacy includes "the appropriation of another's name and likeness[ ] . . . *without consent and for the financial gain of the appropriator*") (emphasis supplied).[4]

But to show that the employees did not give their authorization

---

[4] Perez's Georgia RICO claims were predicated on the same underlying fraudulent acts as

or consent to the submission of the licensure documents would require a highly individualized inquiry. In this respect, all of Perez's claims are predicated on the contention that the former and current employees' signatures in the limited subagent license applications had been forged, and that the employees never gave Atlanta Check permission to use or release any of their personal identifying information.

> [H]owever, whether a signature was forged as to a particular [employee] would require individualized evidence to prove the lack of authenticity of the signature. In order to prove at trial whether [an employee's] signature was forged, there would have to be testimony from the [employee], testimony from someone familiar with the [employee's] signature, testimony from a handwriting expert, or an individualized comparison of signatures in the specific [employee's employment] file by the jury.

*Rollins, Inc.*, 288 Ga. App. at 189 (1).[5] Likewise, where, as here, there is no evidence showing lack of consent on a classwide basis, each employee would have to testify at trial concerning whether he or she gave Atlanta Check permission to use or release personal identifying information in connection with obtaining the limited subagent licenses. This need for individualized evidence as to each potential class member authorized the trial court's conclusion that class certification was inappropriate.[6] See *Carnett's, Inc.*, 279 Ga. at 127-128 (3), 128-129 (4) (trial court acted within its discretion in refusing to certify a class where individual issue of whether each class member received an unsolicited fax transmission was central to

---

his other substantive claims, and, therefore, likewise required a showing of lack of consent by the employees.

[5] While Perez emphasizes that he has not specifically alleged a cause of action for forgery under OCGA § 16-9-1 (a), that does not change the outcome here. Irrespective of whether Perez brought a separate forgery claim, all of his claims are predicated on his allegation that the individual licensure applications contained a forged employee signature. Thus, Perez must show forgery in order to establish his substantive claims.

[6] Perez did present evidence that the licensure documents contained false information concerning the prelicensing and CE courses taken by Atlanta Check employees; that at least one sponsoring agent had never agreed to sponsor any employees; and that the licensure documents had not been properly notarized. However, the trial court was entitled to find that this evidence did not address or resolve the separate, critical question of whether the Atlanta Check employees' signatures had been forged or whether the employees gave Atlanta Check permission to use or release any of their personal identifying information. In other words, there was evidence that Atlanta Check submitted licensure documents containing false information to the state; the open question not resolved by the evidence presented by Perez was whether and to what extent Atlanta Check employees were complicit with the submission of those documents.

determining who was member of proposed class); *Rollins, Inc.*, 288 Ga. App. at 189 (1) (class certification improper where plaintiff would need to show that the signature of each customer had been forged).[7]

Perez argues that the need for individualized evidence can be avoided based upon the deposition testimony of the former Super Auto manager whose job duties included submitting to the Commissioner the licensure documents for the Atlanta Check employees.[8] During his deposition, the manager invoked his privilege against self-incrimination embodied in the Fifth Amendment to the United States Constitution and refused to answer when asked, "Did you ever sign a signature of an applicant for limited subagent license that was not your name?" He likewise invoked the privilege and refused to answer when asked, "These are signature pages of subagent licenses that we were provided. Do you see where it says signature of applicant? . . . Did you sign any of those?" The manager similarly responded when asked whether he was aware of anyone ever signing someone else's name on the signature line for the applicant.

It is true that in a civil case, if a witness invokes the privilege against self-incrimination and refuses to answer a question concerning whether he or she committed a particular act, it creates "an implied admission that a truthful answer would tend to prove that the witness had committed the act." (Citation and punctuation omitted.) *Simpson v. Simpson*, 233 Ga. 17, 21 (209 SE2d 611) (1974). See also *Baxter v. Palmigiano*, 425 U. S. 308, 318 (III) (96 SC 1551,

---

[7] Several other courts have held that class certification was inappropriate where the issue of each class member's consent would have to be determined on an individualized basis at trial. See *Gene & Gene LLC v. BioPay LLC*, 541 F3d 318, 326-329 (III) (C), (D) (5th Cir. 2008); *Hicks v. Client Svcs.*, No. 07-61822-CIV, 2008 WL 5479111, at *7-8 (II) (C) (2) (S.D. Fla. Dec. 11, 2008); *Levitt v. Fax.com*, No. WMN-05-949, 2007 WL 3169078, at *3-7 (D. Md. May 25, 2007); *Kenro, Inc. v. Fax Daily*, 962 FSupp. 1162, 1169-1170 (II) (C) (S.D. Ind. 1997); *Forman v. Data Transfer*, 164 FRD 400, 404 (E.D. Pa. 1995). Compare *Kavu, Inc. v. Omnipak Corp.*, 246 FRD 642, 647 (II) (C) (1) (W.D. Wash. 2007) (class certification appropriate where consent could be addressed class-wide based upon database utilized by defendant).

[8] In a separate enumeration of error, Perez argues that the trial court's inquiry into whether individual factual issues would predominate was flawed because the court considered the merits of Perez's underlying substantive claims. As Perez points out, "in determining the propriety of a class action, the first issue to be resolved is not whether the plaintiffs have stated a cause of action or may ultimately prevail on the merits but whether the requirements of [Rule 23] have been met." *Sta-Power Indus. v. Avant*, 134 Ga. App. 952, 954 (1) (216 SE2d 897) (1975). Nevertheless, "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." (Citations and punctuation omitted.) *McGarry v. Cingular Wireless*, 267 Ga. App. 23, 25 (1) (599 SE2d 34) (2004). Hence, the "trial court may consider the merits of the action sought to be certified to the degree necessary to determine whether the requirements of [Rule 23] are satisfied." (Citations and punctuation omitted.) *Diallo v. American InterContinental Univ.*, 301 Ga. App. 299, 301 (1), n. 9 (687 SE2d 278) (2009). Because the trial court considered the merits of Perez's claims only to the extent necessary to conduct the predominance inquiry, the court committed no error.

47 LE2d 810) (1976); *Hathcock v. Hathcock*, 249 Ga. 74, 75 (1), (2) (287 SE2d 19) (1982); *In the Interest of A. A.*, 293 Ga. App. 471, 474 (1) (667 SE2d 641) (2008). But the manager's invocation of the privilege in response to the questions asked in this case does not cure the need for highly individualized evidence on the issue of employee consent. Even if the nonparty manager's responses created an implied admission by the defendants that there were licensure documents which contained forged applicant signatures,[9] this generalized evidence would not resolve whether any *particular* former or current employee out of the 196 proposed class members had his or her signature forged on the application or had licensure documents completed and submitted without his or her consent. See *Rollins, Inc.*, 288 Ga. App. at 190-191 (1).

Perez also argues that class certification is appropriate because the General Assembly specifically authorized class actions for identity fraud claims in OCGA § 16-9-130 (a), which provides:

> Any consumer victim who suffers injury or damages as a result of a violation of [the identity fraud statute, OCGA § 16-9-121,] may bring an action individually or as a representative of a class against the person or persons engaged in such violations under the rules of civil procedure to seek equitable injunctive relief and to recover general and punitive damages sustained as a consequence thereof in any court having jurisdiction over the defendant; provided, however, punitive damages shall be awarded only in cases of intentional violation. A claim under this article may also be asserted as a defense, setoff, cross-claim, or counterclaim or third-party claim against such person.

We are unpersuaded that OCGA § 16-9-130 (a) changes the result in this case, since that statute should not be construed as eliminating the prerequisites for class certification set forth in Rule 23 in identity fraud cases. "All statutes are presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference to it," (punctuation omitted), *Inland Paperboard &c. v. Ga. Dept. of Revenue*, 274 Ga. App. 101, 104 (616 SE2d 873) (2005), and statutes addressing the same subject matter should be construed in harmony with one another. See *City of Buchanan v.*

---

[9] We need not resolve under what circumstances a nonparty witness's invocation of the privilege can be used to draw an adverse inference against a party. See *Simpson*, 233 Ga. at 18 (party and third-party witness both invoked the privilege and refused to testify concerning relationship between them). See also Paul S. Milich, Ga. Rules of Evidence § 27.5, n. 17 (2d ed. 2009) (discussing cases from foreign jurisdictions concerning nonparty witnesses).

*Pope*, 222 Ga. App. 716, 717 (1) (476 SE2d 53) (1996). As such, OCGA § 16-9-130 (a) must be read against the backdrop of Rule 23 and in a manner that harmonizes the two provisions. This is particularly true since OCGA § 16-9-130 (a) authorizes the bringing of a class action "under the rules of civil procedure" — of which Rule 23 clearly is a part — thereby indicating that the standard procedural requirements for a class action still apply in identity fraud cases. Accordingly, OCGA § 16-9-130 (a) is not a blanket endorsement of class certification in all cases where identity fraud is alleged; rather, the plaintiff also must meet the prerequisites for a class action contained in Rule 23.

"The predominance inquiry requires a court to consider how a trial on the merits would be conducted if a class were certified" to ensure that what is purportedly a class case will remain so once put before a jury, based upon the nature of the evidence that the plaintiff will have to present to prove the classwide claims. (Citation and punctuation omitted.) *Gene & Gene LLC*, 541 F3d at 326 (III) (B). "As we have previously held, where the resolution of individual questions plays such an integral part in the determination of liability, a class action suit is inappropriate." (Punctuation and footnote omitted.) *R. S. W. v. Emory Healthcare*, 290 Ga. App. 284, 287 (1) (659 SE2d 680) (2008). Therefore, we conclude that the trial court did not abuse its discretion in denying Perez's motion for class certification under Rule 23 (b) (3), given that there was evidence that individual factual issues pertaining to the former and current employees' authorization or consent would predominate over any common factual issues in the case. See *Carnett's, Inc.*, 279 Ga. at 127-128 (3), 128-129 (4); *Rollins, Inc.*, 288 Ga. App. at 187-192 (1).

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED MARCH 17, 2010.

*Martin & Martin, Kimberly N. Martin, Thomas F. Martin, Taylor, English & Duma, John M. Gross, Corey N. Cutter*, for appellant.

*Gray, Rust, St. Amand, Moffett & Brieske, Harvey S. Gray, Michael D. St. Amand, Monica L. Wingler, Goodman, McGuffey, Lindsey & Johnson, Robert M. Darroch, Summer J. Hughes, Jonathan A. Weintraub*, for appellees.