FIRST DIVISION
BARNES, P. J.,
LAND and WATKINS, JJ.

NOTICE: Motions for reconsideration must be physically received in our clerk's office within ten days of the date of decision to be deemed timely filed.

https://www.gaappeals.us/rules-1-8/

October 12, 2023

# In the Court of Appeals of Georgia

A23A1162. TRABA et al v. GREGORY B. LEVETT AND SONS FUNERAL HOME, INC et al.

LAND, Judge.

After Sandra Currier's death, her stepson hired Gregory B. Levett and Sons Funeral Home, Inc. to arrange funeral services for her and to cremate her remains. After an obituary was published in the newspaper, the funeral home retained Cremation Care of Georgia, Inc. to cremate the body. Currier's siblings filed suit against the funeral home and crematorium, arguing that they suffered irreparable damage since they intended to bury Currier's remains, as intact as possible, near their mother's grave. The funeral home and crematorium filed a motion for summary judgment. The trial court granted summary judgment against the siblings, finding that they lacked standing under OCGA § 31-21-7 (c) because they forfeited their right to

control the disposition of Currier's remains. See OCGA § 31-21-7 (c) ("A person entitled under law to the right of disposition shall forfeit that right" if he does not exercise that right "within two days of notification of the death of decedent or within three days of decedent's death, whichever is earlier"). The trial court also held that the funeral home owed no duty to attempt to locate Currier's next-of-kin before cremating her body. The siblings appeal from that order. For the following reasons, we affirm.

"Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Citation and punctuation omitted.) *Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010). "We review the grant of a motion for summary judgment de novo, viewing the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant." (Citations and punctuation omitted.) *Lowe v. Etheridge*, 361 Ga. App. 182, 182 (862 SE2d 158) (2021).

So viewed, the record shows that Currier was pronounced dead on May 7, 2019. The evidence suggests that her husband shot and killed her in their home before

taking his own life. Her husband called the Brookhaven Police Department the night of the murder, communicated suicidal ideations due to his wife's ongoing battle with liver cancer, and provided a phone number for his son (Currier's step-son), Richard Currier.

At the time of her death, Currier had been estranged from her siblings for several years. Between 1985 and 2018, Currier had little to no contact with any of her siblings. In 2018, Currier began to chat online via Facebook Messenger with her sister, Norma Traba. Currier's stepson testified that in the twenty years that he knew and/or lived with Currier, he never met or had any contact with her siblings.

In light of her husband's contemporaneous death, Currier's last will and testament designated her stepson as the successor executor of her estate. In his role as the named executor, the stepson began making arrangements, including funeral service arrangements for Currier and his father. He believed that both Currier and his father wished to be cremated.

According to the funeral home, its standard practice is to conduct initial intake procedures over the phone, which involves obtaining the decedent's information and the next-of-kin's date of birth and social security information. The funeral home then proceeds to take custody of the body until someone comes to the funeral home to

direct its disposition. The individual directing the disposition of the body coordinates with a funeral director at the funeral home. If there is a question as to the legal authority of the person directing the disposition, the funeral home posts an obituary in the Atlanta-Journal Constitution newspaper to try and find family and/or next of kin. The funeral home then waits to see if anyone contacts them to contest the right of burial.

The crematorium deposed that they accept a body for cremation if they are either retained directly by the next-of-kin or they are retained by a third-party funeral home. If it is retained directly by the next-of-kin, the crematorium's standard procedures require it to solicit information about their identity and relationship with the decedent and to sign authorizations. If it is retained by a funeral home, the crematorium relies upon the funeral home to provide the necessary paperwork and to obtain the required permit and authorizations.

In the instant case, the funeral home conducted an initial intake over the phone with the stepson and obtained information regarding Currier and her husband on May 9, 2019. The funeral home's intake forms indicate that the stepson identified himself as Currier's stepson. Later that day, the stepson came to the funeral home to sign the necessary documents and finalize arrangements for the disposition of the bodies. As

4

a part of this process, the stepson signed a form authorizing the release of Currier's body from the DeKalb County Medical Examiner to the funeral home in which he identified himself as Currier's "authorized Legal Next-of kin." He also provided the funeral home with information required to issue a Georgia death certificate for Currier. The death certificate worksheet compiled by the funeral home identified the stepson as the informant. Because the stepson was not Currier's next-of-kin, he executed a notarized affidavit swearing that he had no knowledge regarding the whereabouts of her relatives. The funeral home then placed an obituary in the Atlanta Journal-Constitution on May 11, 2019, and it exists in perpetuity in online records.

After the stepson decided to have Currier's remains cremated, the funeral home retained the services of the crematorium to carry out the cremations. As part of this process, the stepson signed a form authorizing Cremation Care to cremate the remains. In this form, the stepson certified that he was Currier's "Adult Step-Child" and that he had the right to authorize the cremation of her remains. In accordance with these instructions, the funeral home secured a permit for the disposition of human remains from the DeKalb County Department of Vital Records and delivered these documents and Currier's body to the crematorium. Currier's body was cremated on May 13, 2019, six days after her death.

On the morning of May 7, 2019 — the date of Currier's death — Norma Traba, Currier's sister, woke up to a text message sent by Currier the night before stating that her husband had "tried to kill [her] with a gun," and then a follow up text saying "Please don't call cops." Over the next few days, Traba sent Currier a few text messages inquiring about her safety, which went unanswered. Traba never called the police or asked them to perform a wellness check at Currier's residence. It was not until nearly two weeks after Currier's death that Traba performed a Google search and learned of Currier's death. Traba then contacted both the funeral home and the Brookhaven Police Department, and was informed that Currier had been cremated on May 13, 2019. Traba made several follow–up phone calls to the Brookhaven Police Department to discuss the release of Currier's estate.

Traba then contacted her other siblings to bring a lawsuit against the funeral home and crematorium. The siblings' suit against the funeral home and crematorium alleged that they willfully and negligently failed to make a good faith effort to locate the next-of-kin before cremation and sought punitive damages. The siblings contend that they suffered irreparable damage as a result because they intended to bury Currier's body, as intact as possible, next to their mother in El Paso. The funeral home and crematorium filed a motion for summary judgment, arguing that the

6

siblings forfeited their right of disposition because they did not exercise this right within three days of death, and thus they lacked standing to file suit. See OCGA § 31-21-7 (c). The trial court granted summary judgment in favor of the funeral home and crematorium.

The siblings argue that the trial court erred by finding that they lacked standing to bring this lawsuit once they forfeited their right to determine the disposition of Currier's remains under OCGA § 31-21-7 (c), and by granting summary judgment in favor of the funeral home and crematorium. We are unpersuaded.

When tasked with interpreting statutory language, this Court begins our analysis with "familiar and binding canons of construction." (Footnote omitted.) *DeKalb County Bd. of Tax Assessors v. Barrett*, 361 Ga. App. 598, 600 (865 SE2d 192) (2021). In doing so, "we must afford the statutory text its plain and ordinary meaning, consider the text textually, and read the text in its most natural and reasonable way, as an ordinary speaker of the English language would," and seek to "avoid a construction that makes some language mere surplussage." (Footnotes omitted.) Id. And, as in this case, "when the language of a statute is plain and susceptible of only one natural and reasonable construction, courts must construe the statute accordingly." (Footnote omitted.) Id.

7

In 2009, the Georgia General Assembly enacted OCGA § 31-21-7, which contains extensive provisions dealing with the disposition of a decedent's remains and the arrangement for a decedent's funeral. Subsection (b) of OCGA § 31-21-6 sets out a priority list of persons who can make such arrangements. It provides, in relevant part, as follows:

> *Except as provided in [OCGA § 31-21-7 (c)],* the right to control the disposition of the remains of a deceased person; the location, manner, and conditions of disposition; and arrangements for funeral goods and services to be provided vests in the following, in the order named . . . (1) The healthcare agent, as defined in [OCGA § 31-32-2]; . . . (3) The surviving spouse of the decedent; . . . (6) The surviving brother or sister of the decedent or, if there is more than one sibling of the decedent, the majority of the surviving siblings[;] . . . (9) The personal representative of the estate of the decedent; (10) The person in the classes of the next degree of kinship, in descending order, under the laws of descent and distribution to inherit the estate of the decedent[;] . . . or (12) In the absence of any person under paragraphs (1) through (11) of this subsection, any other person willing to assume the responsibilities to act and arrange the final disposition of the decedent's remains, including the funeral director with custody of the body, after attesting in writing that a good faith effort has been made to no avail to contact the individuals under paragraphs (1) through (11) of this subsection.

(Emphasis supplied.) OCGA § 31-21-7 (c).

However, subsection (c) of OCGA § 31-21-7 lists the circumstances in which a person named in the preceding categories will forfeit the right to make decisions about the disposition of a decedent's remains. One such circumstance is when "[a]ny person . . . does not exercise his or her right of disposition within two days of notification of the death of decedent or within three days of decedent's death, whichever is earlier[.]" OCGA § 31-21-7 (c). Under these circumstances, the statute provides that the right of disposition "is passed on to the next qualifying person as listed in" OCGA § 31-21-7 (b).

Further, OCGA § 31-21-7 (e) and (f) provide protection to funeral homes by stating that they are allowed to rely on the representations of truthfulness made by the person who signs the funeral arrangements contract, including the truthfulness of the identity of the decedent and the person's authority to act. Subsection (e) specifically provides that a funeral home "shall have the right to rely on such funeral service agreement or authorization and shall have the authority to carry out the instructions of the person or persons the funeral home reasonably believes hold the right of disposition." OCGA § 31-21-7 (e). It goes on to provide that a *"funeral home shall have no responsibility to contact or to independently investigate the existence of any next of kin or relative of the decedent."* (Emphasis supplied.) OCGA § 31-21-7 (e).

9

Subsection (f) provides that if a funeral director "relies in good faith upon the instructions of an individual claiming the right of disposition pursuant to subsection (b) or (d) of this Code section," "the funeral establishment or funeral director shall not be subject to criminal or civil liability or subject to disciplinary action for carrying out the disposition of the remains in accordance with such instructions" even if such individual is "later determined to have falsely or fraudulently represented himself or herself as having such a right." OCGA § 31-21-7 (f).

In this case, it is undisputed that the right to control Currier's remains vested in a "majority of [her] surviving siblings" on May 7, 2019, the date of her death. However, Traba was the only sibling who had recent contact with Currier prior to her death, and she did not learn of Currier's death until almost two weeks after the fact. Under the clear language of OCGA § 31-21-7 (c), the siblings forfeited their right to control the disposition of Currier's remains when they failed to exercise it within three days of Currier's death. OCGA § 31-21-7 (c). The right then passed onto the stepson as the personal representative of the estate of the decedent, as set forth in Currier's will.[1] See OCGA § 31-21-7 (b) (9).

---

[1] The siblings appear to argue that the stepson did not have authority to determine the disposition of Currier's remains as the personal representative of her estate under OCGA § 31-21-7 (b) (9) because her will had not yet been probated. However, even if he was not yet qualified in law

10

The siblings appear to argue that the defendants "induced [the stepson] to commit fraud" by failing to conduct an independent investigation into whether the stepson was the person authorized to direct the disposition of Currier's remains. This argument is without merit because the statute clearly imposes no such duty. See OCGA § 31-21-7 (e) (funeral homes bear "no responsibility to contact or to independently investigate the existence of any next of kin or relative of [a] decedent"). In fact, when the stepson informed the funeral home that he did not have any knowledge of the whereabouts of Currier's family, the funeral home, despite having no legal duty to do so, made a good faith effort to inform any potential relatives of Currier's death by publishing an obituary notice in the Atlanta Journal-Constitution and its online website on May 11, 2019, and waited 48 hours before cremating her remains.

Based upon the above, the trial court did not err by concluding that the siblings forfeited their rights to determine the disposition of Currier's remains and thus did not have standing to bring suit against the funeral home and crematorium. See *In re*

as the personal representative of Currier's estate, the stepson affirmatively represented himself as having the right and the authority as personal representative, and the funeral home was entitled to rely upon that good faith representation. OCGA § 31-21-7 (f). See also OCGA § 51-1-2 (7) (defining an "Executor" as "any person nominated in a will who has qualified to administere a testate estate") and OCGA § 51-1-2 (12) (a "personal representative" of an estate can, among other things, be the "executor").

11

*Estate Wheeler*, 349 Ga. App. 716, 717 (1) (824 SE2d 715) (2019) ("Standing, of course, is a prerequisite to the existence of subject-matter jurisdiction") (citation and punctuation omitted); *Ga. Home Appraisers, Inc. v. Trintec Portfolio Svcs. LLC*, 349 Ga. App. 356, 362 (2) (825 SE2d 833) (2019) (in order to have standing, the party seeking relief must demonstrate that it, among other things, "personally suffered some actual or threatened injury"). We find no error in the trial court's grant of summary judgment in favor of the funeral home and crematorium.[2]

*Judgment affirmed. Barnes, P. J., and Watkins, J., concur.*

---

[2] To the extent that the siblings attempt to add additional arguments through their reply brief and supplemental brief, we find that such attempts constitute arguments "beyond the scope of the enumerated errors and will not be considered by this Court." *In re Whittle*, 339 Ga. App. 83, 85, n. 2 (793 SE2d 123) (2016). See also *Perez v. Atlanta Check Cashers, Inc.*, 302 Ga. App. 864, 867, n. 3 (692 SE2d 670) (2010) ("[A] [p]arty may not use his reply brief to expand his enumeration of errors by arguing the incorrectness of a trial court's ruling not mentioned in the enumeration") (punctuation omitted).